Shauck, J.
The agreed statement of facts upon which the case was ' submitted in the circuit court contains a sufficiently definite description of the voting machine which is the subject of actual and contemplated purchases for use in Cuyahoga county. It also describes with unfaltering confidence the manner in which the voter’s choice is indicated when the machine is manipulated by one who has mastered its intricacies and when it operates in accordance with the expectations of its designer. The reader of that statement may find that his own confidence halts when he recalls observed instances of the failure of machinery to operate according to the designer’s intention, and when he remembers the necessity for the frequent duplication of essential mechanical devices to provide for contingencies. Perhaps we may not take notice of the demonstrated interruption and partial failure to realize the essential purposes of elections which have resulted from the propensity of voting machines to disappoint the expectation of designer and manufacturers.
But if the case required it, .it would be easy to maintain that a judicial question is presented, by the consideration, that however consistently with the intention of the designer the machine may operate, and however simple its manipulation may be to those who have become familiar with it, it is in contemplation that it shall be used by the body *489 of the electors, most ot whom have no knowledge whatever of its operation, and that ' from the necessities of the use but little time can be allowed to acquire such knowledge and understanding, one minute being the time allowed by the statute to each elector for that purpose. Since Monroe v. Collins, 17 Ohio St., 665, it has been recognized as the established law of the state, that while the constitutionally guaranteed right to vote may be the subject of legislative regulation, all laws passed “to regulate its exercise or prevent its abuse must be reasonable, uniform and impartial.” They must promote and not hinder its exercise. It is within the judicial function to give effect to the right plainly guaranteed by the paramount law by seeing that under the guise of regulation, a mode shall not be provided which unnecessarily diminishes the elector’s confidence that he is certainly giving expression to his own choice. It would be interesting to apply this general view of the subject to the legislation in question, but it is quite unnecessary in view of the definite requirement of the second section of the fifth article of the constitution that “all elections shall be by ballot.”
This provision is taken literally from the former constitution of the state adopted in 1802. In a school for the study of English, it might be both interesting and useful to consider the meanings of the word “ballot” in primitive times, and the process b}^ which its present meaning has been derived. But when the word was originally used as a part of the organic law of the state, the process of derivation had been completed and its meaning in the connection had become plain and well understood. It was not doubted then, nor has *490 it ever been really doubted since, that it is a printed or written expression of the voter’s choice upon some material capable of receiving and reasonably retaining it, prepared or adopted by each individual voter and passing by the act of voting from his exclusive control into that of the election officers, to be by them accepted as the expression of his choice. When the phrase was readopted, in our present constitution, this meaning of the provision had been illustrated and made absolutely certain by repeated acts of legislation. It is conjectured that those who framed and adopted the constitution thought that a secret vote would contribute to the freedom with which the right of suffrage would be exercised, and the conjecture may be well founded. It is perhaps historically true that the two modes of voting in vogue at the time of the adoption of the constitution, were voting by ballot and voting viva voce, and that for many reasons the latter mode was rejected from the permanent policy of the state. But this does not aid the inquiry. The framers of the constitution did not place in the organic law the negative provision that the legislature shall not enact such law for the government of elections as would provide for voting viva voce, or communicate to the public a knowledge of the votes of the electors. What object they sought to accomplish by what they ordained may be the subject of divers conjectures, but respecting what . they ordained there is no room for conjecture or doubt. They ordained that all elections shall be by ballot.
It does appear from the statement of the case, that card boards are attached to the machines bearing the names of candidates and the proposi *491 tions and amendments upon which the electors are to express a choice. These remain attached to the machine' for the information of all voters. They do not pass into the control of any voter, nor by the act of voting into the control of the officers of the election. To speak of such a card board as the ballot of the constitution is obviously paying but mock deference to that instrument.
The abstract of the briefs shows that the courts of different states have reached conflicting conclusions upon the question presented, and some of the cases have arisen under constitutional provisions not differing substantially from' our own.' A careful consideration of the decisions shows that the real question does not concern the strictness with which a doubtful provision of the constitution should be construed. The question here is, whether a provision, whose meaning is certain, shall be enforced. It cannot be necessary to repeat the reasons which have led this court to give an affirmative answer to that question, and to reject utterly the theory of equivalents to the plain requirements of the constitution. According to the view entertained by all constitutional lawyers, constitutions may not be amended by violence. If a regard for the interests of taxpayers, and for the importance of certainty and confidence in the exercise of the elective franchise, shall prevent such amendment of the constitution in the mode appointed as would be necessary to authorize the use of voting machines, it would only justify the prevision of those who framed and adopted the instrument that its requirements and prohibitions would save the people from the consequences of their impulses, while the provision for its orderly *492 amendment would enable them to give effect to their deliberately formed opinions.
Judgment reversed, and judgment for plaintiff in error.
.Summers, Spear and Price, JJ., concur.
Crew, C. J., and Davis, J.; dissent.